Case number five for argument today is United States v. Caya. May it please the court. Counsel, you will be called. Usually let your adversary get a seat. I'm sorry. Ms. Feit. Thank you, Your Honor, and may it please the court. The question presented here is relatively narrow. Can law enforcement conduct an investigatory search of a person's home without a warrant, based only on reasonable suspicion, if the person is on supervision where there is no condition of supervision authorizing it? This is a standing condition of supervision based on the statute. So the government has argued that the statute operates something like a standing condition, but there's certainly no Supreme Court case suggesting as much. In Griffin, it's important— And there's no Supreme Court case suggesting the opposite. Well, I— —cannot be invoked if the search occurred under a statute that has never been held unconstitutional. Well, Your Honor, there's— That's herring. There's a couple of things going on here. First, I want to go back to your comment that the Supreme Court has never said otherwise, and I would beg to differ. In Griffin, the Wisconsin Supreme Court held that there was a probation or exception to the warrant requirement, which didn't require the state to get a warrant and which allowed searches on a reasonable suspicion. The Supreme Court very specifically, in its opinion, declined to hold as much and said that instead they were going to reach a narrow decision under the special use doctrine. Yeah, it said the question was left open. Correct. And then Knights sustained a similar search, and then the Court of Appeals in Sampson said whatever was not sustained in Knights is prohibited. And Sampson reversed and said no. No, we didn't say that everything not approved there was prohibited. Sampson is a very broad decision, and now you're saying anything not approved in Sampson is prohibited. Well, you got two questions. One is the herring question. What is it that prohibited the use of this Wisconsin statute? And two, where is it that the Supreme Court has ever held that the Fourth Amendment does prohibit the warrantless home search of somebody who's on conditional release? I'm not aware of such a case. Sure. Well, I'll answer these in a slightly different order, but I want to get to both of your questions. I think answering in this order would be a good idea. So first to start with herring. Herring is about a situation where there's, like, a mistake that occurs, but it didn't flip the Fourth Amendment analysis so that it's the burden of the defendant to prove bad faith before they can establish a Fourth Amendment violation. Now, certainly there is a whole good faith doctrine out there that the government has never relied on in this case. Herring is not a good faith case. It just says the exclusionary rule is used for deterrence, and there's no deterrence in using the exclusionary rule where the search occurred under a state law that has never been held unconstitutional. That's why I raised it, because no decision has ever held Section 3021.13.7r or anything like it unconstitutional. Well, Your Honor, herring is really about a very different situation than what we have here. It was a different state law, but it established a principle about the relation between state law and the exclusionary rule. It's that principle that I'm asking you about. Are you perhaps talking about Kroll rather than herring? So herring is the... Oh, maybe I've misremembered which is which. I apologize, Your Honor. There is a case called Kroll. It may be my fault, too. I sometimes get names mixed up. So Kroll is a good faith case that says that good faith reliance on a state statute can cause a court to not apply the exclusionary rule even where you have a Fourth Amendment violation. But, again, the government has never raised good faith. It has never raised Kroll. It chose to ask the courts for a very broad reading of the Fourth Amendment itself to create something like a probationer exception, that where you are on supervision it is acceptable to search without a warrant on less than probable cause. And the state statute purports to authorize precisely that. But the state statute only accomplishes that to the extent that the Fourth Amendment permits it, of course. And it is really a black letter point of Fourth Amendment law that where there is no exception permitting a warrantless search of a home, it is not permitted. Griffin, Knights, and Sampson are all about individuals who are on supervision. They were on a different – look, we've now moved to the second question. Is there any decision of the Supreme Court holding that a warrant is needed to search a person, the home of a person, who is on some form of conditional release? Any form. Well, Your Honor, we're not here on a – Any form. No. The answer is no. Well, Your Honor, we're not here on a habeas corpus position. The Supreme Court has said that police may not search a home without a warrant. You are asking for the application of the exclusionary rule based on the proposition that there was a violation of the Constitution. That's why I'm asking whether the Supreme Court has ever held that there is a warrant needed for a home search of somebody who's on conditional release. Any form of conditional release. And yes, Your Honor. In Payden and in all the cases talking about a search of a home, the court has said a warrant is needed. Of a person on – And they have never said except for a person on supervised release. Look, I'm asking a very straightforward question. I'm aware of three cases in which the Supreme Court has dealt with searches of people on conditional release. They're Sampson, Knights, and Griffin. Great. Is there – none of those holds that a warrant was required. Is there some other case that holds that a warrant is required that I'm missing? I think that Sampson is the most recent in this line. Maybe it's not. That's why I'm asking. Sure. Well, and I think, Your Honor, those three cases actually do establish this proposition because they are so specific in – They certainly do not. Well – All three of them reject the claim by the supervised person. All three of them reject it in terms that are explicitly narrow. Look, you are making the same mistake the Ninth Circuit made in Sampson. It said anything not approved in Knights is forbidden. The Supreme Court said that's not the way constitutional law works, and they reversed it in Sampson. You're now arguing, it sounds to me like, and your brief seemed quite explicit, anything not approved in Sampson is forbidden. I'm asking, is there any case holding that it's forbidden? Or are you just saying anything not approved in Sampson is forbidden, and I'm now going to distinguish Sampson? And I apologize that I am not – I mean, my answer to the question is simply that the Supreme Court has never held that there is any class of persons who is immune from the warrant requirement, and there are numerous – Except people on supervised release see Sampson. Your Honor, that is where there was a condition of supervision, and it was a parole case quite different from this case. And in that case, like the others, the court – Well, you're back to anything not approved in Sampson is forbidden. And Sampson itself holds that that's not a sound way to reason about the scope of the warrant requirement. That's why I'm asking, is there any other Supreme Court case dealing with people on conditional release? No, Your Honor, not that I'm aware of. It's just those three, I think. That is correct. And I read those three as being – taking pains to distinguish the very particular facts of that case where the warrant requirement that is applicable to all of us is not – was not required or was not applicable to those individuals, in particular those with a condition. And that's why in, you know, federal court, we routinely argue about whether someone should have a warrantless search condition in their case. It's because generally it matters under Supreme Court precedent. I will reserve my remaining time. Thank you. Certainly, counsel. Mr. Anderson. Good morning, Your Honor. My name is Robert Anderson. I have the privilege of representing the United States in this matter. And it does seem that the defendant is arguing that anything that's not explicitly identified in either Knights or Sampson isn't on that continuum. And simply because I searched high and low, could not find another state anywhere that used the term extended supervision, simply because they used the term extended supervision in Wisconsin, that they're arguing, it seems, that they're off the continuum. Therefore, they have a greater expectation of privacy than anyone on – even on probation under Knights. It's just parole by another name. I'm sorry? It's just parole by another name. Correct. That's exactly what Wisconsin said when they – I have the citation of the Brown case in my brief that the Wisconsin Supreme Court said the extended supervision law is the replacement for the parole system under the bifurcated sentencing. It's judicially imposed parole. I'm sorry again? It's judicially imposed parole. Correct. It's the second part of the bifurcated sentence. Part of the sentence. They've recognized that it's part of the sentence, too. Now, as we know, reasonableness is the standard for the Fourth Amendment, any search under the Fourth Amendment. The district court here correctly found, under the totality of circumstances and consistent with Knights and Sampson line of cases, Kaya's significantly diminished expectation of privacy as a supervisee, balanced against legitimate law enforcement interest, and supported by reasonable suspicion meant the police executed a reasonable search consistent with the Fourth Amendment and consistent with Supreme Court authority. There was no dispute that Kaya was under the Department of Corrections supervision. That puts them on the continuum. The Act 79 applies to convicted felons in Wisconsin who are under supervision, and the officers acted in genuine belief that they were authorized to conduct a search under Act 79 if they had that reasonable suspicion. That's exactly what they did. The district court correctly found that they properly had reasonable suspicion based on the overdose girlfriend's statements that there was methamphetamine in the house that they were using or paraphernalia there, the knowledge of the police officers or the deputy sheriff and sergeant, I guess it was, that he had had contact with Kaya before he knew Kaya to be on felony supervision, and the sergeant's observations that Kaya's own drug use symptoms were apparent when he met him at the door that day. So since 2013, this law has been in place in Wisconsin. Since 2013, it's been published in the statutes, and it doesn't need an order of the court. It's the default in Wisconsin for those on felony supervision. And a ruling for the defendant in this case would have substantial implications for the use of this statute. Correct. It strikes me as essentially a facial challenge. It would create an inconsistency that those under probation or those under parole are subject to these conditions, but the very same language, just calling it extended supervision, they would not be, and that would also be inconsistent with those Supreme Court cases with Knights and with Samson. And maybe I'm mistaken, but my reading of Griffin was, and this is quoted, or it's cited in the Knights' opinion by the Supreme Court, Griffin was a statute that was passed after he was put on parole supervision. He did not agree to the condition or consent. None of these decisions is based on consent. Right, and that's exactly what Knights was distinguishing. This is not an issue of consent. It's an issue of they're aware, they're under supervision, they can be subject to searches, therefore they have a lessened expectation of privacy, and the Supreme Court says that's reasonable. Or whatever subjective expectation of privacy is objectively unreasonable. I'm sorry, say that again. Whatever subjective expectation might have been held as objectively unreasonable. That's the pressure point in this case. Correct. Right? Correct, correct, because that's the whole test. Whenever looking at expectations of privacy, whether objectively, that's reasonable, whether society or the general public would accept that expectation of privacy, that it's not outside the realm of expectations. So it does seem that the defendant is arguing the Supreme Court, because never use these words, extended supervision, that this isn't on the continuum that the court identified in Knights, and therefore none of the Supreme Court, they're saying none of the Supreme Court jurisprudence, Knights or Sampson, applies to this case. They're asking you to find that someone on extended supervision has the privacy rights of an unconvicted individual, and that's not right. Actually, extended supervision in Wisconsin is sort of a ramped-up form of parole because of the additional sanctions that can be administratively imposed. Correct. Correct, and that again is, that's why I cited in the brief the portions of the administrative code, the supervision rules that are used by the Department of Corrections and what he's subject to, and also trying to refute their argument that he never agreed to this, or he didn't have a choice. Their original argument was, unlike probation and unlike parole, he didn't have a choice whether he accepted extended supervision. Well, the statutes and administrative codes that I cited indicate otherwise. So the point is, the very basic point is, it doesn't matter what you call it. It's on the continuum, and if you're under supervision by Department of Corrections and you have conditions somewhere, even by statute, as in Griffin, as in there was a statute in Sampson, and there was a statute here. Even if you, by reason of those conditions, are subject to search and you know you have a lessened expectation of privacy, it's recognized by the Supreme Court. It's not because they've consented, but that lessened expectation of privacy, balanced against the interest of the state in supervision or protection of the public, means it's a reasonable search. Well, knowledge of the condition is not a requirement. It's not important to the equation. Not explicit acknowledgment of knowledge, but it's there. I mean, this was in the statutes. It was available for anyone to read, and actually, I would point out, neither at the district court level nor anywhere else did Mr. Kaya ever assert that he wasn't aware of Act 79 or was never told. Each time he signed those conditions of supervision, it said he was provided with them and his probation parole officer explained them to him. Never did he assert that he wasn't aware of Act 79. Would that be important? It wouldn't be dispositive. It wouldn't be important. It wouldn't make much of a difference in this case. But if he had asserted it, then we would have brought it in. If it's objectively unreasonable to expect to be free from this kind of search, why would his awareness of it be important? Right. It would just be, I'm just saying that in the sense of if he were more, if there was something, if the probation officer had come in and said, yeah, I told them all about Act 79, it would have made it slam dunk. Here, it's that he is aware of it, it's in the statutes, and he doesn't have an expectation of privacy under this law. So I do ask you to affirm the judgment of the district court in this matter. Thank you. Ms. Feith, anything further? Okay. Thank you very much. The case is taken under advisement.